[Civ. No. 125.   Second Appellate District.—January 8, 1906.]

## WILLIAM R. BROWN, Respondent, v. LOS ANGELES RAILWAY COMPANY, Appellant.

NEGLIGENCE—EVIDENCE—ELECTRIC STREET-CAR—INCREASING SPEED AT CROSSING.—Evidence reviewed and held sufficient to sustain the finding that the motorman in charge of a car of the defendant was guilty of negligence in increasing the speed of the car as he was approaching a crossing, when he was charged with knowledge that the plaintiff was about to cross in front of his car.

ID.—FINDING OF NEGLIGENCE—APPEAL.—The question of negligence is, in general, one of fact and not of law, and the verdict of the jury, or finding of the lower court, in favor of the plaintiff, cannot be disturbed on appeal unless the lack of negligence on the part of the defendant, or the existence of contributory negligence on the part of the plaintiff, follows necessarily as a conclusion of law from the undisputed facts.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

Bicknell, Gibson, Trask, Dunn & Crutcher, and Norman S. Sterry, for Appellant.

Waters & Wylie, for Respondent.

SMITH, J.—The suit was brought to recover damages for the alleged negligence of the defendant in the operation of its cars.  Plaintiff was driving a one-horse buggy, to which was attached a hack, to which in turn was attached a vehicle called a "runabout"; and the alleged injury was caused by the collision of one of defendant's cars with the hack, at the intersection of Flower and Twelfth streets in the city of Los Angeles.  The former street runs north and south, and the plaintiff had approached defendant's track while traveling eastward on Twelfth street.  The court found that the injury was caused by the negligence of the defendant, and gave judgment for the sum of $500 damages, from which, and from an order denying defendant's motion for a new trial, defendant appeals.

The only question involved is as to the sufficiency of the evidence to justify the finding.  According to plaintiff's testimony, as he approached Flower street he was going in a walk, and when he had approached within fifteen feet of the track he stopped and took a look both ways, and seeing no car, proceeded to cross, when the accident occurred.  But in the opinion of the court, which is inserted in the statement on motion for a new trial, it appears that the court disregarded the testimony of the plaintiff and based its conclusion upon that of the motorman, which, in the opinion of the court, was corroborated by the testimony of the other passengers on the car.  According to the motorman's testimony, when he first saw the vehicles of the plaintiff, the car was about one hundred or one hundred and twenty-five feet from the point of the accident, and he thereupon "threw off the current and applied the air and rang the bell"; but then the plaintiff "pulled up on his lines and almost stopped"; and he says, "I then released the air I had on and let my car roll."  The plaintiff then "started to drive on"; and, at that time, he says, the car was "about in the neighborhood of forty or fifty feet, and I put the air on in full force then, rang the bell, and put on the reverse lever."  When the witness first saw the plaintiff's train of vehicles, the car was running somewhere in the neighborhood of nine or ten miles an hour, and at this time the plaintiff's horse was somewhere in the neighborhood of fifteen feet from the track; but while the plaintiff was slacking his speed, the car approached to within forty or fifty

feet of the point of the accident, at which time the horse's head was about six or eight feet from the track. This testimony is corroborated generally by the passengers on the car, except that, according to their testimony, the car was about twenty feet from the point of the accident when the plaintiff started up his horse and the brake was put on the second time; while, according to the conductor, it was somewhere between thirty and forty feet. The estimates of the witnesses as to the distances are, of course, more or less inaccurate; but the view of the case taken by the court was, in effect, that the plaintiff, observing that the car was slowing up, supposed that he could cross the track in safety, and that he would have done so but for "the act of the motorman in releasing the air brake and accelerating his speed after he had slowed up before ascertaining whether the plaintiff had stopped"; and the court was further of the opinion that "the plaintiff had a right to assume that defendant would not increase the speed of the car approaching the crossing until plaintiff had crossed the track." It is added: "Defendant's counsel have pertinently asked: 'How could plaintiff be deceived with regard to the speed of the car, when he did not see it?' But the defendant has proven that he did see it, and the plaintiff's cause is changed by this evidence from injury by reckless speed of defendant's car to negligence of the motorman in increasing his speed as he was approaching the crossing, when he was charged with knowledge that the plaintiff was about to cross in front of his car."

The case is undoubtedly a close one, but we cannot say that the views of the court below were not justified by the facts shown (*Clark* v. *Bennett,* 123 Cal. 278 [55 Pac. 908]) and there are some other features in the case that tend to justify this conclusion. We know nothing of the rate of speed to which the car was reduced at the time it reached the point of forty or fifty feet from the place of the accident; but it appears that at that time the horse's head was six or eight feet from the track, and, as the car struck the hack, the horse must have traveled some thirty feet before the collision took place, and from this a high rate of speed may be inferred. The question of negligence is, in general, a question of fact, and not of law, and the verdict of the jury, or finding of the. lower court, cannot be disturbed, unless the lack of negligence:

on the part of the defendant, or the existence of contributory negligence on the part of the plaintiff, follows necessarily as a conclusion of law from the undisputed facts. (*Schneider* v. *Market St. Ry. Co.,* 134 Cal. 488, [66 Pac. 734].)   Upon the evidence, we do not think we would be justified in disturbing the findings of the court below.

The judgment and order appealed from are affirmed.

Allen, J., concurred.

GRAY, P. J.—I concur in the principal opinion and in the reasoning thereof; and, in addition, I think a reasonable conclusion from all the evidence is that, while the plaintiff may have been negligent, yet the motorman had actual notice of the dangerous position in which plaintiff had placed himself, and a clear opportunity to have avoided the collision by the exercise of reasonable diligence to do so after he saw the dangerous position in which plaintiff was placing himself.   A street-car running into the third in a series of a horse and three vehicles, coupled together and passing before it, is pretty good evidence of gross negligence on the part of the motorman.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 8, 1906, and the following opinion rendered thereon:

BEATTY, C. J.—Upon the evidence in this case the findings and conclusions of the superior court are clearly sustained by the doctrine of "last clear chance."